**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CEMENT AND CONCRETE WORKERS DC BENEFIT FUND, on its own behalf and on behalf of others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE NEW YORK AND PRESBYTERIAN HOSPITAL,<br><br>*Defendant*. | Case No. 1:25-cv-5571-BMC |

**DEFENDANT THE NEW YORK AND PRESBYTERIAN HOSPITAL'S ANSWER**

Defendant The New York and Presbyterian Hospital ("NYP"), by and through its undersigned counsel, hereby answers and asserts defenses ("Answer") to Plaintiffs'[1] Consolidated Class Action Complaint, Dkt. No. 32, filed on June 5, 2026 (the "Complaint"). Pursuant to Fed. R. Civ. P. 8(b)(3), The New York and Presbyterian Hospital ("NYP") denies, by "general denial," all allegations of the Complaint "except those specifically admitted" below.[2]

All allegations not expressly admitted herein are denied. Any factual allegation admitted is admitted only as to the specific facts and not as to any conclusions, characterizations,

[1] On October 7, 2026, Plaintiff UFCW Local 1500 Welfare Fund voluntarily dismissed all of its claims without prejudice in its individual action and the consolidated action against Defendant. (Dkt. 58). The term "Plaintiffs" in this document refers to Cement and Concrete Workers DC Benefit Fund ("CCWDC") and Pointers, Cleaners, and Caulkers Local 1 Welfare Fund ("PCC").

[2] For any answer where NYP asserts that it does not know or is not aware of a particular alleged fact, NYP specifically means and avers that it "lacks knowledge or information sufficient to form a belief about the truth of [the] allegation," and so denies the allegation under Fed. R. Civ. P. 8(b)(5). Unless otherwise noted, all emphasis added, internal citations and quotation marks omitted, and capitalizations conformed without brackets.

implications, or speculations that are contained in the allegation or in the Complaint as a whole. Unless otherwise noted, NYP does not interpret the table of contents, footnotes, appendices, headings, subheadings, photographs, charts in the Complaint, or any other allegations not contained in one of the Complaint's 237 numbered paragraphs, as well-plead allegations to which any response is required. To the extent such a response is required, they are denied. NYP reserves the right to amend and/or supplement this Answer.

This statement is incorporated, to the extent appropriate, into each numbered paragraph of this Answer.

## RESPONSES TO SPECIFIC ALLEGATIONS

## I. NATURE OF THE ACTION

1. Denied, except that NYP admits that NYP is a hospital system including the listed facilities that provides healthcare services to patients in the United States.

2. Denied.

3. Denied.

4. Denied.

5. Denied.

6. Denied.

7. Denied.

8. Denied.

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

18. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

19. Denied, except that NYP admits that the DOJ filed a lawsuit against NYP in the Southern District of New York, including the complaint referenced in the allegation. NYP respectfully refers the Court to the referenced complaint for a complete and accurate statement of its contents.

20. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegation, except to respectfully refer the Court to the referenced materials.

21. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegation, except to respectfully refer the Court to the referenced materials.

22. Denied, except that NYP admits the revenue and net income figures reported are accurate.

23. Denied, except that NYP admits the compensation figures reported are accurate.

24. Denied.

25. Denied.

## II. PARTIES

### a. Plaintiffs

26. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations, except that NYP denies that NYP charges "inflated" prices.

27. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

28. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations, except that NYP denies that NYP charges "inflated" prices.

29. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

30. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

31. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations, except that NYP denies that NYP charges "inflated" prices.

32. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

### b. Defendant

33. Admitted.

34. Denied, except that NYP admits that NYP received approval from the NY State Department of Health to become the active parent of a hospital in Cortland, New York in late 2015, and in 2016 similarly received approval to become the active parent of New York

Methodist Hospital in Brooklyn which was later merged into NYP. NYP through is affiliated physician practices has employed the clinicians of other practices in recent years.

35. No response required to this allegation defining a term as used in the complaint. To the extent that a response is required, NYP denies the allegation.

## III. JURISDICTION VENUE

36. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP admits that NYP is headquartered in New York and otherwise denies the allegation.

37. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegation.

38. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegation.

39. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP admits that NYP receives payments for healthcare services remitted across state lines and that it purchases supplies and equipment shipped across state lines.

## IV. BACKGROUND

### a. Overview of Role of Insurance Companies in Fully Insured and Self-Funded Health Plans

#### i. Unlike for Fully Insured Plans, Employers Offering Self-Funded Health Plans Bear Financial Responsibility for Paying Members' Bills

40. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations, except that NYP admits that some business, unions, and local governments offer health plans to employees and members.

41. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations, except that NYP admits that some health plans are fully insured by health insurance companies.

42. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations, except that NYP admits that some health plans are self-funded by the employer or union.

43. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

**ii. Insurance Companies Play Other Roles in the Provision of Healthcare**

44. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

45. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations, except that NYP admits that some health insurance companies provide Network Vendor and/or TPA services for some health plans.

46. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

47. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

48. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

49. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

50. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

51. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

52. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

**b. In a Functioning Market, Insurers and Health Care Providers Negotiate in Ways That Reduce Costs and Realize Efficiencies**

53. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

54. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

55. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

56. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

57. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

**c. In a Market Distorted by Anticompetitive Behavior, These Competitive Mechanisms Are Not Available**

68. Denied.

69. Denied.

70. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

71. NYP lacks knowledge or information sufficient to form a belief as to the truth of the quoted language. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

72. NYP lacks knowledge or information sufficient to form a belief as to the truth of the quoted language. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

73. NYP lacks knowledge or information sufficient to form a belief as to the truth of the quoted language. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

74. NYP lacks knowledge or information sufficient to form a belief as to the truth of the quoted language. To the extent the allegation purports to characterize the contents of documents,

NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

75. NYP lacks knowledge or information sufficient to form a belief as to the truth of the quoted language. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

76. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

## V. ANTICOMPETITIVE CONDUCT

77. Denied.

78. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

79. Denied.

80. Denied. To the extent the allegation purports to characterize NYP's agreements with Payors, NYP respectfully refers the Court to those agreements for a complete and accurate statement of their terms.

81. Denied. To the extent the allegation purports to characterize NYP's agreements with Payors, NYP respectfully refers the Court to those agreements for a complete and accurate statement of their terms.

82. Denied.

83. Denied, except that NYP admits that it stated in its answer to the complaint in the litigation referenced in the allegation that it "has often agreed to modify, limit, or delete the All Products provision to accommodate insurer network designs." To the extent the allegation purports to characterize the contents of that answer, NYP respectfully refers the Court to the referenced answer for a complete and accurate statement of its contents.

84. Denied.

85. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

86. NYP lacks knowledge or information sufficient to form a belief as to the truth of the first, second, third and fourth sentences. NYP otherwise denies the allegations contained in this paragraph.

87. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

88. As to the first sentence, NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations. NYP otherwise denies the allegations contained in this paragraph.

89. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

90. Denied. To the extent the allegation purports to characterize NYP's agreements with payors, NYP respectfully refers the Court to those agreements for a complete and accurate statement of their terms.

91. Denied, except that NYP admits that it publishes a combined data file for the named hospitals.

92. NYP admits that the quoted language appears in the American Hospital Directory's financial data reports for NYP but denies the Plaintiffs' characterization of this language.

93. Denied. To the extent the allegation purports to characterize NYP's agreements with Payors, NYP respectfully refers the Court to those agreements for a complete and accurate statement of their terms.

94. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

95. Denied.

96. Denied.

97. Denied.

## VI. ANTICOMPETITIVE EFFECTS

### a. NYP's Prices Drive Up Costs for Payors

98. Denied.

99. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

100. Denied.

101. Denied. NYP admits that the quoted language exists in a document prepared by a NYP employee but otherwise denies the characterization of the document. NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

102. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

103. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

104. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

#### b. NYP Charges Supercompetitive Prices Throughout the Relevant Geographic Markets and the State of New York

105. Denied.

106. Denied.

107. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

108. No response is required to this allegation defining a term as used in the complaint. To the extent that a response is required, NYP denies the allegation.

109. No response is required to this allegation defining a term as used in the complaint. To the extent that a response is required, NYP denies the allegation. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

110. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

111. Denied.

112. NYP lacks knowledge or information sufficient to form a belief as to the truth of the purported data.

113. NYP lacks knowledge or information sufficient to form a belief as to the truth of the purported data.

114. NYP lacks knowledge or information sufficient to form a belief as to the truth of the purported data.

115. NYP lacks knowledge or information sufficient to form a belief as to the truth of the purported data.

116. NYP lacks knowledge or information sufficient to form a belief as to the truth of the purported data.

117. NYP lacks knowledge or information sufficient to form a belief as to the truth of the purported data.

118. NYP lacks knowledge or information sufficient to form a belief as to the truth of the purported data.

119. NYP lacks knowledge or information sufficient to form a belief as to the truth of the purported data.

120. NYP lacks knowledge or information sufficient to form a belief as to the truth of the purported data.

121. Denied.

122. Denied, except that NYP admits that Diagnostic-Related Group ("DRG") codes are billing codes hospitals submit to Payors for procedures or inpatient stays.

123. NYP lacks knowledge or information sufficient to form a belief as to the truth of the purported data.

124. Denied.

125. Denied, except that NYP admits that The Leapfrog Group is a nonprofit that publishes safety grades for United States hospitals. NYP refers to the cited statements for their complete and accurate contents and denies Plaintiffs' characterization.

126. Denied. NYP refers to the cited statements for their complete and accurate contents and denies Plaintiffs' characterization.

127. Denied.

128. Denied.

129. Denied.

## VII. RELEVANT MARKETS

130. As to the first sentence, the allegation contains legal conclusions to which no response is required. NYP otherwise denies the allegations contained in this paragraph.

131. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations contained in this paragraph.

### a. Relevant Product Market

132. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations, except that NYP admits that some of the services that it offers at some of its facilities are inpatient services.

133. NYP lacks knowledge or information sufficient to form a belief as to the truth of the referenced sources.

134. NYP lacks knowledge or information sufficient to form a belief as to the truth of the referenced sources.

135. Denied.

136. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations contained in this paragraph.

137. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations contained in this paragraph.

**b. Relevant Geographic Market**

138. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations contained in this paragraph.

139. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations contained in this paragraph.

140. Denied.

141. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations contained in this paragraph.

142. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations contained in this paragraph.

143. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations contained in this paragraph.

144. Denied.

145. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

146. With respect to the first, second, and third sentences, NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations. NYP otherwise denies the allegations contained in this paragraph, except that NYP admits that New York state law

contains certain standards for network adequacy. NYP respectfully refers the Court to the relevant statutory law and legal precedent regarding those standards.

147. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

148. Denied.

## VIII. NEW YORK PRESBYTERIAN'S MARKET POWER

149. Denied.

150. Denied.

151. Denied. To the extent the allegation purports to characterize the contents of testimony or documents, NYP respectfully refers the Court to the referenced materials for a complete and accurate statement of their contents.

152. Denied.

153. Denied.

154. Denied.

155. Denied.

156. Denied.

157. Denied.

158. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

159. Denied.

160. Denied.

161. Denied.

162. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

163. Denied.

164. Denied.

165. Denied, except that NYP admits that its hospital network has the alleged number of locations, beds, affiliated physicians and annual visits. NYP otherwise denies the characterization of the documents and data and respectfully refers the court to the referenced documents and data.

166. Denied.

167. Denied.

168. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations. To the extent a response is required, NYP denies the allegation.

169. Denied.

170. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

171. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations. To the extent a response is required, NYP denies the allegation.

172. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations. To the extent a response is required, NYP denies the allegation.

173. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations. To the extent the allegation purports to characterize the contents of documents,

NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

174. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

175. NYP lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

176. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

177. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

178. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

179. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

180. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

181. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

182. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

183. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

184. Denied. To the extent the allegation purports to characterize the contents of documents, NYP respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.

185. Denied.

186. Denied. NYP respectfully refers the Court to the referenced Complaint for a complete and accurate statement of its contents.

## IX. NO PROCOMPETITIVE BENEFIT JUSITIFIES NEW YORK PRESBYTERIAN'S ANTICOMPETITIVE CONDUCT

187. Denied.

188. Denied.

189. Denied.

190. Denied.

## X. CLASS ALLEGATIONS

### a. Class Definition

191. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

192. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

193. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

194. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

### b. Certification Requirements

195. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

196. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

197. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

198. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

199. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegation.

## XI. STANDING

200. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegation.

201. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegation.

202. Denied.

203. Denied.

204. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegation.

205. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

206. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

207. The allegation contains legal conclusions to which no response is required. To the extent a response is required, NYP denies the allegations.

## XII. CLAIMS FOR RELIEF

### COUNT ONE: RESTRAINT OF TRADE IN VIOLATION OF THE SHERMAN ACT (15 U.S.C. § 1)

208. NYP incorporates by reference its answers to Paragraphs 1 through 207.

209. Denied.

210. Denied.

211. Denied.

212. Denied.

213. Denied.

214. Denied.

215. Denied.

216. Denied.

217. Denied.

218. Denied.

219. Denied.

**COUNT TWO: RESTRAINT OF TRADE IN VIOLATION OF THE DONNELLY ACT (N.Y. Gen Bus. Law § 340, et seq.)**

220. NYP incorporates by reference its answers to Paragraphs 1 through 219.

221. Denied.

222. Denied.

223. Denied.

224. Denied.

225. Denied.

226. Denied.

227. Denied.

228. Denied.

229. Denied.

230. Denied.

**COUNT THREE: UNJUST ENRICHMENT**

231. NYP incorporates by reference its answers to Paragraphs 1 through 230.

232. Denied.

233. Denied.

234. Denied.

235. The allegation contains legal conclusions to which no response is required. NYP otherwise denies the allegations contained in this paragraph.

## XIII. JURY DEMAND

236. No response required.

## XIV. PRAYER FOR RELIEF

237. No response required.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming the burden of proof on any defenses for which the burden rests upon Plaintiffs or the putative class members, regardless of how such defenses are denominated herein, or waiving defenses not raised below that it need not plead at this time, NYP asserts the following affirmative defenses. By setting forth these affirmative defenses, NYP does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs or the putative class members. All of the following defenses are pleaded in the alternative, and none relieve Plaintiffs or the putative class members from proving each and every element of the asserted claims where Plaintiffs or the putative class members have the burden of proof.

### FIRST DEFENSE: LACHES

238. NYP hereby incorporates the preceding paragraphs in support of this defense.

239. Plaintiffs' claims, including the claims of putative absent class members, are barred, in whole or in part, by the doctrine of laches.

240. The equitable laches doctrine bars assertion of a claim when there is "(1) a lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282 (1961); *see also Tri-Star*

*Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994). The laches period starts to run when the plaintiffs knew or should have known of the defendant's wrongful conduct. *Yeda Rsch. & Dev. Co. v. ImClone Sys. Inc.*, 443 F. Supp. 2d 570, 578 (S.D.N.Y. 2006) (citing *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1163 (Fed. Cir. 1993).

241. Plaintiffs have demonstrated an unreasonable lack of diligence in bringing their claims. The challenged conduct that underlies Plaintiffs' claims occurred and was discoverable by Plaintiffs years ago based on allegations that the provisions have been in place for "decades." Compl. ¶ 202.

242. Throughout the Complaint, Plaintiffs' allegations rely on materials available to Plaintiffs years prior to the filing of the Complaint. For example, Plaintiffs rely on publicly available hospital pricing data. *See, e.g.*, Compl. ¶¶ 109-123. Plaintiffs' allegations additionally rely on public news articles, statements, and studies. *See, e.g.*, Compl. ¶¶ 72-75, 88, 93, 125-126, 170-172, 176-181. Some sources are dated as early as 2018. *See, e.g.*, Compl. ¶¶ 72, 88, 93, 179, 181.

243. Yet, Plaintiffs and their members received the benefits of in-network participation with NYP for years to NYP's prejudice. Plaintiffs' unreasonable and prejudicial lack of diligence in raising their claims bars them now.

244. Accordingly, the laches doctrine bars Plaintiffs from seeking relief at this delayed juncture.

## SECOND DEFENSE: ESTOPPEL

245. NYP hereby incorporates the preceding paragraphs in support of this defense.

246. As set forth above, the challenged conduct that underlies Plaintiffs' claims occurred and was discoverable by Plaintiffs years ago.

247. Nonetheless, Plaintiffs have accepted the benefits of being in-network with NYP hospitals and NYP's healthcare services for years, despite the contracts for services including the challenged provisions. *See* Compl. ¶¶ 26, 31. Plaintiffs acknowledge that they contract with Network Vendors, namely Anthem, to gain access to their negotiated network, which includes in-network coverage for NYP. *See* Compl. ¶ 47-48. Based on negotiated rates between the Network Vendor and NYP, which Plaintiffs have agreed to by selecting Anthem as their Network Vendor, Plaintiffs make payments for services NYP provides to plan members. *See* Compl. ¶¶ 42, 52. By making these payments and accepting services from NYP on behalf of their members under the terms of the negotiated contracts, Plaintiffs induced NYP's reasonable reliance thereon. *See* Compl. ¶¶ 48-49, 55.

248. NYP relied in good faith, and to its detriment, on Plaintiffs' actions in continuing to accept services and make payments based on negotiated in-network terms.

249. Plaintiffs' claims are therefore estopped from pursuing their claims in whole or in part.

**THIRD DEFENSE: WAIVER**

250. NYP hereby incorporates the preceding paragraphs in support of this defense.

251. Plaintiffs' claims, including the claims of putative absent class members, are barred, in whole or in part, by the doctrine of waiver.

252. As set forth above, the challenged conduct that underlies Plaintiffs' claims occurred and was discoverable by Plaintiffs who agreed with their Network Vendor to make payments for NYP services under the terms of negotiated agreements. *See* Compl. ¶¶ 46-50.

253. Plaintiffs' conduct in continuing to accept services and make payments based on negotiated in-network terms at what they now allege is an anticompetitive attempt to inflate prices is evidence of an intention to waive any right to bring this suit and is inconsistent with any intention other than to waive their right to bring suit.

254. Plaintiffs, by their actions, accepted the benefits of an ongoing relationship with NYP and relinquished their right to bring suit.

255. The doctrine of waiver therefore bars Plaintiffs' claims in whole or in part.

**FOURTH DEFENSE: RATIFICATION/ACQUIESCENCE/CONSENT**

256. NYP hereby incorporates the preceding paragraphs in support of this defense.

257. Without admitting any unlawful or unfair conduct, and specifically denying the same, Plaintiffs' claims, including the claims of putative absent class members, are barred, in whole or in part, due to the ratification of, and consent to, the conduct of Defendants.

258. The Complaint alleges and relies on publicly available information, much of which has been available for years. *See, e.g.*, Compl. ¶¶ 16, 72-75, 88, 91-92, 109-123, 125-126, 170-172, 176-181. Plaintiffs further rely on agreements between insurers and healthcare providers that they were aware of for years, coupled with contracts with Network Vendors and Third Party Administrators which they themselves are a party to. *See, e.g.*, Compl. ¶¶ 48, 52.

259. Accordingly, because Plaintiffs have been aware for years of the very same conduct they now challenge, Plaintiffs' claims are barred by the doctrines of ratification, acquiescence, and consent.

**FIFTH DEFENSE: PROCOMPETITIVE JUSTIFICATIONS**

260. NYP hereby incorporates the preceding paragraphs in support of this defense.

261. Plaintiffs' claims, including the claims of putative absent class members, are barred because any alleged anticompetitive effects outlined in the Complaint, even if true, are outweighed by procompetitive justifications.

262. The challenged provisions expand output, reduce prices, and result in increased quality of services by permitting NYP to more efficiently cover the costs required to operate a premium healthcare system in the New York City area.

263. The challenged provisions provide patients with access to greater choice and more competitive options for healthcare by creating a network that gives patients freedom to access an in-network provider of choice without penalty.

264. There are no less restrictive means to achieve the procompetitive benefits of the challenged provisions. Alternatives either are economically equivalent to the challenged provisions, fail to provide the volume certainty necessary to support *ex ante* rate concessions from providers, impose unacceptable financial risk on insurers for conduct beyond their control, or eliminate competition between NYP and the favored providers.

265. Accordingly, Plaintiffs' claims are barred in whole or in part.

**SIXTH DEFENSE: RELEASE**

266. NYP hereby incorporates the preceding paragraphs in support of this defense.

267. Plaintiffs' claims, including the claims of putative absent class members, whether held directly or obtained through assignment, are barred, in whole or in part, to the extent those claims have been released as to NYP.

**SEVENTH DEFENSE: LACK OF CAUSATION AND PROXIMATE CAUSATION**

268. NYP hereby incorporates the preceding paragraphs in support of this defense.

269. Any damages or losses alleged by Plaintiffs' claims, including the claims of putative absent class members, were not, in fact, caused by any fault, act or omission by NYP and were caused, if at all, proximately by the conduct of parties other than NYP for which NYP is not responsible and cannot be held liable.

**EIGHTH DEFENSE: LACK OF STANDING**

270. NYP hereby incorporates the preceding paragraphs in support of this defense.

271. Plaintiffs concede that they have no contract with NYP and that they make payments to their selected Third Party Administrator, the insurer, not to NYP. *See* Compl. ¶ 51.

272. Plaintiffs' claims, including the claims of putative absent class members, are barred, in whole or in part, by their lack of antitrust standing and Article III constitutional standing, including because the Plaintiffs' purported injuries are indirect and derivative.

**NINTH DEFENSE: FAILURE TO STATE A CLAIM**

273. NYP hereby incorporates the preceding paragraphs in support of this defense.

274. Plaintiffs' claims, including the claims of putative absent class members, are barred in whole or in part, for failure to state a claim upon which relief can be granted.

**TENTH DEFENSE: NO SUPRACOMPETITIVE PAYMENT**

275. NYP hereby incorporates the preceding paragraphs in support of this defense.

276. Plaintiffs' claims, including the claims of putative absent class members, are barred in whole or in part, to the extent that they provided services that do not (or did not) include any purported supracompetitive payment caused by the conduct alleged in the Complaint.

**ELEVENTH DEFENSE: RELEVANT MARKET IS NOT PLAUSIBLE**

277. NYP hereby incorporates the preceding paragraphs in support of this defense.

278. Plaintiffs allege that the commercial sale of "inpatient general acute care ("inpatient GAC") hospital services" is the relevant product market. Compl. ¶ 132. The market "is no larger than the five boroughs of New York City." Compl. ¶ 138. Based on this definition, Plaintiffs allege that the borough of Manhattan is a relevant geographic market and that the four boroughs of the Bronx, Brooklyn, Manhattan, and Queens is another relevant geographic market (the "Four-Borough Market"). Compl. ¶¶ 139, 141.

279. Plaintiffs' claims, including the claims of putative absent class members, are barred in whole or in part, to the extent that the alleged relevant market is not a well-defined relevant market for this Action.

**TWELFTH DEFENSE: INSUFFICIENT MARKET POWER**

280. NYP hereby incorporates the preceding paragraphs in support of this defense.

281. Plaintiffs allege that NYP is a "must have" provider of healthcare services, but in reality NYP does not have market power in the market defined by Plaintiffs or a different market that does not have the same flaws.

282. Plaintiffs allege that NYP imposed the challenged provisions on commercial because it is a "must have" healthcare provider. *See* Compl. ¶ 153.

283. This ignores the many other competing healthcare providers in New York City and the surrounding area that could provide healthcare services to members of commercial plans as necessary.

284. Plaintiffs allege NYP has "less than 50% market share. . . ." Compl. ¶ 185. The only specific shares Plaintiffs allege are 30% and 25% of inpatient GAC hospital discharges in certain boroughs. Compl. ¶ 165. This is far below traditional measures of market power. *Tops*

*Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 97 (2d Cir. 1998); *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 129 (2d Cir. 1995).

285. Plaintiffs' claims, including the claims of putative absent class members, are barred in whole or in part, to the extent that they fail to show that NYP has market power in a well-defined relevant market.

**THIRTEENTH DEFENSE: CORE ECONOMIC ACTIVITY**

286. NYP hereby incorporates the preceding paragraphs in support of this defense.

287. The challenged provisions define the services for which the payor is contractually obligated to make payment. Payors' plan benefits design determines the coverage obligations payors have for their enrollees' healthcare expenses, which often depends on the network placement of the provider. By designating a provider as "in-network," the payor is both simultaneously creating contractual obligations to the enrollee and triggering reimbursement obligations to the provider. The challenged network placement provisions also contractually obligate providers to provide care to the payors' covered patients at the agreed-upon discounted rates. These provisions are, therefore, inseparable from the contract.

288. Without the challenged provisions, payors offer nothing of value to providers in exchange for rate concessions. Payors' obligations to cover their members' care are owed under separate insurance contracts with patients and employers, not providers. Patients, in the absence of any further agreement with providers, would be obligated to pay providers' higher billed charges, as adjusted by applicable regulations. A payor seeking to lower its financial obligations from this pre-existing set of contractual obligations – through additional rate concessions – must offer consideration in return. The challenged network placement provisions are that consideration.

289. The challenged provisions are not separable from the rate terms they support. They cannot be modified or eliminated without changing the anticipated volume of services under contract, and without dissolving the consideration that supports the rate concessions on the other side of the bargain. As such, they are core economic terms of the managed care bargain, not restraints attached to it.

290. The challenged provisions are not "restraints" because they are not exclusionary and do not prevent payors from contracting with other providers. An agreement to buy a product is not a restraint even if it means that the purchaser no longer needs to buy the same product from someone else. For the same reason, an agreement to place a provider in an payors' network is not a restraint of trade, but the existence of trade itself. Negotiation over such placement is core activity of both the provider, including NYP, and the payor.

291. Plaintiffs' claims are therefore barred in whole or in part.

**FOURTEENTH DEFENSE: ANCILLARY RESTRAINTS**

292. NYP hereby incorporates the preceding paragraphs in support of this defense.

293. Even if the challenged contractual provisions were considered restraints, they are not unlawful because they are reasonably ancillary to legitimate and procompetitive transactions for the provision of healthcare services to payors' members.

294. Agreements for the provision and reimbursement of healthcare services to payors' members are legitimate and procompetitive commercial transactions. The transaction secures for payors the ability to have their members treated at specified, agreed-upon rates. This enhances predictability, reduces potential for legal disputes over payment, provides discounts from billed charges or otherwise applicable costs, and ensures member access to a comprehensive range of

services. The transaction also secures for patients seamless access to high quality care, streamlined billing, and reduced costs.

295. Network placement provisions – including the challenged contractual provisions – are subordinate to the transaction for the provision of healthcare services to payors' members. Network placement provisions define the class of patients that are the subject of the overall provider healthcare services contract. These provisions further determine the volume of patients that providers can reasonably expect to treat under that contract, which is integral to the ability of providers, like NYP, to set appropriate rates.

296. The challenged provisions are reasonably necessary to achieve the legitimate and procompetitive purposes of the overall healthcare transaction. Without these provisions, payors would deliver different or lower levels of volume under the contract, which would undermine the economic basis on which rates were negotiated and would undermine the benefit of the bargain.

297. There are no less restrictive alternatives that could achieve the legitimate and procompetitive purposes of the overall healthcare services contract. Contracts without network placement provisions do not contain necessary volume commitments, which are material terms in the contract, or indeed, any contract for the provision of services.

298. Nor can the network placement provisions be replaced or supplanted with specific volume commitments, market share requirements, or other proxies for network placement.

299. Network placement provisions that do not permit NYP to contract to be an in-network provider for all the plans an payor offers is not a less restrictive alternative because it eliminates competition from NYP for the excluded plans, reduces volume under the contract, and deprives the payor of the rate concessions associated with such volume.

300. Plaintiffs' claims are therefore barred in whole or in part.

**RESERVATION OF RIGHTS**

NYP reserves all rights to amend or supplement defenses pursuant to Federal Rule of Civil Procedure 15.

**WHEREFORE**, NYP respectfully requests that this Court enter judgment in its favor and against the Plaintiffs and award any other relief it deems just and appropriate.

Dated: October 16, 2026

*/s/ Leah Brannon*
Leah Brannon*
D. Bruce Hoffman*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Ave. N.W.
Washington, D.C. 20037
(202) 974-1500
lbrannon@cgsh.com
bhoffman@cgsh.com

Breon S. Peace
Joseph M. Kay
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2052
bpeace@cgsh.com
jkay@cgsh.com

Colin R. Kass*
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 416-6800
ckass@proskauer.com

Vinay Kohli**
PROSKAUER ROSE LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 557-2900
vkohli@proskauer.com

David A. Munkittrick
Reut N. Samuels

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000
dmunkittrick@proskauer.com
rsamuels@proskauer.com

*Attorneys for Defendant The New York and Presbyterian Hospital*
**Admitted Pro Hac Vice*
*** Pro Hac Vice Forthcoming*